UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                  Case No. 20-CR-214

FABIAN JOHNSON,

    Defendant.

# RECOMMENDATION AND ORDER

## 1. Background

On the afternoon of February 4, 2020, Milwaukee Police Officer Ryan DeWitt was driving an undercover vehicle and conducting a drug investigation in the area of North Sherman Boulevard and West North Avenue. He drove to a Wendy's parking lot that he knew was used by mobile drug dealers to meet customers,[1] where he parked to conduct surveillance. (ECF No. 18-1 at 1; *see also* ECF No. 18-8, ¶¶ 10-11, 15-17, 23.) In the parking lot were two running and occupied vehicles, the occupants of which all appeared to be waiting for someone in that they were neither eating nor were they

---

[1] Johnson disputes whether the parking lot was a common meeting spot for mobile drug dealers. In his reply, he asserts for the first time that these disputes might merit an evidentiary hearing. (ECF No. 21 at 5, fn. 1.) Because the court does not find this dispute material, there is no need for an evidentiary hearing.

visiting any of the other nearby businesses. (ECF No. 18-1 at 1.) About five minutes after DeWitt arrived, a Chevy Equinox with excessive window tint arrived and parked next to one of the waiting vehicles. (ECF No. 18-1 at 1-2.) The sole occupant of the waiting vehicle got out and entered the Equinox. (ECF No. 18-1 at 1-2.)

These observations were consistent with mobile drug dealers, who in DeWitt's experience frequently schedule meetings with multiple customers at a single location and use excessive window tint to conceal their identities. (ECF No. 18-1 at 1.) DeWitt contacted other officers, who conducted a traffic stop of the Equinox, with the unlawful window tint providing a lawful basis for the stop. (ECF No. 18-1 at 3.) Police Officer Joshua Kranz was one of the officers who conducted the traffic stop and reported that he "observed furtive movements between the driver and passenger as [they] approached as well as [the driver] reaching around the vehicle and appeared nervous while asking basic questions." (ECF No. 18-1 at 3.)

The driver of the Equinox was identified as the defendant and the passenger was identified as Anna Bilda. A record check of Johnson revealed he was on felony probation or parole for possession of a firearm as a felon. (ECF No. 18-1 at 3-4.) Officers conducted an Act 79 search of the vehicle, *see* 2013 Wis. Act 79, and found a mason jar containing seven individually wrapped bags of marijuana and 30 individually packaged bags of crack cocaine. (ECF No. 18-1 at 4.) Two additional bags of crack cocaine were later found on the floor of the police van near where Johnson had been

2

seated when he was transported to the police district station. (ECF No. 18-1 at 4; *see also* ECF No. 18-1 at 18.)

Later that same evening officers went to Johnson's home with the intent of completing a knock and talk investigation. As they were knocking on the door, the same Equinox from the traffic stop pulled up, driven by Ermamarie Jenkins, who stated she lived at the home. (ECF No. 18-1 at 10.) Jenkins allowed the officers into the home and said she had a firearm in a backpack and about a gram of marijuana in the residence. (ECF No. 18-1 at 10.) Jenkins refused the officers' requests for consent to search the residence. (ECF No. 18-1 at 10.)

Therefore, DeWitt drafted an affidavit in support of a request for a search warrant for the residence and, following approval of the search warrant by a Milwaukee County Circuit Court judge, officers searched the residence. (ECF No. 18-1 at 11.) Between the mattress and box spring in the master bedroom officers recovered a loaded .40 caliber handgun that forms the basis for counts one and three of the indictment. (ECF No. 18-1 at 13, 15.) In other parts of the bedroom officers found the crack cocaine, heroin, fentanyl, and marijuana that forms the basis for count two of the indictment. (ECF No. 18-1 at 5, 13-14, 16.)

Johnson seeks to suppress all of this evidence for various reasons. He argues that his initial detention was excessively long, there was no reasonable suspicion for an Act

3

79 search, the warrant was not supported by probable cause, and, finally, the warrant was based on material misrepresentations and omissions.

## 2. Analysis

### 2.1. Traffic Stop

Johnson acknowledges that the police officers lawfully stopped him. A person who operates a vehicle with illegally tinted windows might as well post an invitation on the car for the police to stop him whenever they want to. *See United States v. Bogan*, No. 17-CR-128, 2017 U.S. Dist. LEXIS 175916, at *6 (E.D. Wis. Sep. 26, 2017). Of course, this stop was never really about tinted windows; the police were investigating suspected drug dealing. In the brief body camera footage that Johnson provided, documenting roughly the first eight minutes of the interaction among Johnson, Bilda, and the police officers, the tinted windows are not mentioned. When one of the officers notifies dispatch of the stop, he gives the reason for the stop as "drug activity." But the fact that the officers used the tinted windows as a pretext to stop Johnson does not make the stop unlawful.

**2.2. Delay**

Johnson argues that the delay between the initial stop at 4:24 PM[2] and when Kranz tested the tint on the windows at 4:53 PM was unreasonable and transformed the stop into a de facto arrest, requiring probable cause to search the car. (ECF No. 13 at 12.)

The fact that officers lawfully stopped Johnson for his illegally tinted windows does not mean they could extend the stop to investigate whatever else might spur their curiosity. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). An officer can investigate other matters only "so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

Here, the delay was directly attributable to the initial reason for the stop—the excessively tinted windows. It was about 25 minutes into the stop when another squad car pulls up and an officer passes Kranz an object out the window. (Ex. D[3], timestamp

---

[2] The body-camera footage the parties have provided contains a timestamp that the parties appear to agree is six hours ahead of the actual time depicted.

[3] Citations to "Ex." rather than "ECF" reflect documents received on CD.

22:49.) Kranz announces, "This is what we were waiting for." Bilda asks, "What's that?" and Kranz responds, "Tint meter." Kranz then proceeds to use a device to check the tint on the windows of the Equinox.

This was not an instance where police improperly extended the traffic stop so an unrelated investigation could occur. *Cf. Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Although the court has not been provided the complete body-camera footage, it appears the search began soon after Kranz finished testing the vehicle's windows. That Johnson was not subsequently issued a citation for the tinted windows (the discovery of drugs rendering the ordinance violation for tinted windows inconsequential) does not change the fact that the stop and subsequent search were lawful.

Moreover, suppression of evidence is appropriate only when there is a causal relationship between the delay and the discovery of evidence—for example, where a police officer extends a traffic stop to allow a drug dog to be brought to the scene, which leads to the discovery of contraband. *See, e.g.*, *Rodriguez*, 575 U.S. at 357. There was no such relationship here. The additional fact that led to the search—that Johnson was on supervision—was obtained at the outset of the encounter. Suppression would not be appropriate simply because the officers delayed in acting on that information. But, in any event, the delay was attributable to the initial reason for the stop and, therefore, the fact that it was about 40 minutes between the start of the encounter and when an officer began the search is not a reason for suppression.

**2.3. Search**

In December of 2013 the Wisconsin Legislature passed what is commonly referred to as Act 79. 2013 Wis. Act. 79. Under Act 79, any law enforcement officer may search any property under the control of a person on extended supervision (or otherwise subject to post-conviction supervision) provided "the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision. Any search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing." 2013 Wis. Act 79, § 5; Wis. Stat. § 302.113(7r). Johnson concedes that he was on extended supervision and thus subject to this provision at the time of the search of the Equinox. (ECF No. 13 at 7, 13.)

As framed by the parties, the question the court must decide is whether the officers had reasonable suspicion of drug activity so as to justify a search of Johnson's car. The government notes that, in DeWitt's experience, the parking lot was a location where mobile drug dealers commonly met customers. He observed two people in idling cars that did not seem to be eating food from Wendy's or going to any of the other businesses nearby—again, conduct that was consistent with DeWitt's experience of mobile drug dealing. An Equinox with excessively tinted windows then pulled into the lot, and one of the people who had been waiting got out of her car and into the Equinox.

7

When questioned, these people gave inconsistent explanations for their meeting, and Johnson appeared nervous.

Johnson emphasizes that, inconsistent with a drug deal, Bilda did not quickly get out of the Equinox but was still in the vehicle when officers arrived. Moreover, Bilda and Johnson were obviously co-workers in that they both said so and were wearing sweatshirts of their employer. Arguing that their explanations for their meeting were consistent, Johnson contends that this fact and their obvious relationship as co-workers should have diminished the officers' suspicions that they were engaged in a drug transaction. Johnson also disputes that he appeared nervous, or at least that he was no more nervous than anyone who unexpectedly finds himself confronted by police officers.

However, the parties frame the issue too narrowly. Under Act 79, an officer may search the car of a person on supervision if "the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision." *Any* violation of a condition of release is enough to justify a search.

Johnson's first rule of supervision, as it is for all offenders, *see* Wis. Admin. DOC. § 328.04(3)(a), was to "[a]void all conduct which is in violation of federal or state statute, municipal or county ordinances, [or] tribal law …." (ECF No. 18-2 at 1.) By operating a vehicle with excessively tinted windows, Johnson violated a municipal ordinance

8

proscribing excessive window tint in vehicles. *See Bogan*, 2017 U.S. Dist. LEXIS 175916, at *3-4 (discussing the legality of tinted vehicle windows in Milwaukee). If officers had reasonable suspicion that Johnson was operating a vehicle with excessively tinted windows, a fact that Johnson concedes, they had sufficient cause to justify an Act 79 search of the vehicle. Therefore, the court need not consider whether the officers also had reasonable suspicion regarding a drug offense; the undisputed equipment violation was enough reason to search the car.

Act 79 further requires that "[a]ny search conducted pursuant to this subsection shall be conducted in a reasonable manner and may not be arbitrary, capricious, or harassing." Johnson does not argue that the search was conducted in an unreasonable manner. And the court independently finds that the search was conducted in a reasonable manner. It consisted of an officer leaning into the car and opening the center console, at which point he immediately notified his partner that Johnson was to be arrested.

Nor does Johnson argue that the search was "arbitrary, capricious, or harassing," and the court finds it was not. While the parties dispute the quantum of evidence the officers had, the evidence demonstrates that the officers acted on objective, articulable suspicions such that the search could not be characterized as arbitrary, capricious, or harassing. Therefore, the search of the Equinox was permissible under Act 79.

9

However, even if authorized by statute, the court must also determine whether the search was consistent with the Fourth Amendment. The Fourth Amendment permits even suspicionless searches of parolees. *Samson v. California*, 547 U.S. 843, 857 (2006). "Wisconsin's extended-supervision system is parole by another name." *United States v. Caya*, 956 F.3d 498, 503 (7th Cir. 2020). Thus, the court has no difficulty finding that it is consistent with the Fourth Amendment to permit a search of a vehicle operated by a person on extended supervision when there is reasonable suspicion that the person violated an ordinance regarding excessive window tint. *See id.* ("If, as *Samson* holds, a no-suspicion search of a parolee is constitutionally permissible, so too an Act 79 search—predicated on reasonable suspicion—is constitutionally permissible.")

Therefore, the court will recommend that Johnson's motion to suppress the evidence seized from his vehicle be denied.

**2.4. Search of the Residence**

"Probable cause exists when, under the totality of the circumstances, a prudent person would find it is fairly probable that evidence of a crime is present." *United States v. Daniels*, 906 F.3d 673, 676 (7th Cir. 2018) (quoting *Florida v. Harris*, 568 U.S. 237, 243-44 (2013)). However, no "categorical rule" exists that there is "probable cause to search a particular location simply because a suspected drug trafficker resides there." *United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007).

Nonetheless, the "Court of Appeals for the Seventh Circuit has repeatedly and consistently stated that 'in the case of drug dealers, evidence is likely to be found where the dealers live.'" *United States v. Bradford*, No. 19-CR-162, 2019 U.S. Dist. LEXIS 230484, at *8-9 (E.D. Wis. Nov. 15, 2019) (quoting *United States v. Sewell*, 780 F.3d 839, 846 (7th Cir. 2015) citing *United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018); *United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018); *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014)); *United States v. Jones*, 763 F.3d 777, 795 (7th Cir. 2014); *United States v. Scott*, 731 F.3d 659, 665 (7th Cir. 2013); *United States v. Jones*, 614 F.3d 423, 426 (7th Cir. 2010);*United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009); *United States v. Hoffman*, 519 F.3d 672, 676 (7th Cir. 2008); *United States v. Hobbs*, 509 F.3d 353, 361 (7th Cir. 2007); *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007); *United States v. Mykytiuk*, 402 F.3d 773, 778-79 (7th Cir. 2005); *United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002); *United States v. Singleton*, 125 F.3d 1097, 1102 (7th Cir. 1997); *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996); *United States v. Lamon*, 930 F.2d 1183 (7th Cir. 1991).

Johnson concedes that evidence is likely to be found where drug dealers live, but he argues that DeWitt's affidavit lacked evidence he was a drug dealer. (ECF No. 20 at 13.) While Johnson is correct that, in many cases, there is overwhelming evidence of the defendant's drug dealing activities, the evidence here was sufficient to provide probable cause that Johnson was engaged in dealing drugs. Found in Johnson's vehicle were

11

seven individually wrapped corner cut bags of marijuana and 30 individually packaged corner cuts of crack cocaine. (Ex. 4, ¶ 11.) The affiant stated that he "knows from training and experience that seven 7 corner cut bag[s] of marijuana with a weight of 22.26 grams and thirty one (31) corner cut bags of crack cocaine with a weight of 1.86 grams is consistent with distribution." (Ex. 4, ¶ 16.) The court agrees with this assessment and finds there was probable cause to search Johnson's residence.

Moreover, Jenkins acknowledged that she had marijuana in the residence. (Ex. 4, ¶ 17.) That provided an independent basis to search the residence.

### 2.5. *Franks* Hearing

> A defendant is entitled to a *Franks* hearing—an evidentiary hearing regarding the veracity of information included in a search warrant application—if he can make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause.

*United States v. Mullins*, 803 F.3d 858, 861-62 (7th Cir. 2015).

"The role of a judge considering a defendant's motion for a *Franks* hearing is to remove any overt falsehood from the affidavit—or else incorporate any omitted material facts that undermine probable cause, if an omission is what rendered the affidavit misleading—and see if probable cause remains." *United States v. Daniels*, 906 F.3d 673, 676 (7th Cir. 2018).

The court can begin and end its analysis with the third showing necessary to obtain a *Franks* hearing. "Even deliberately inaccurate representations do not invalidate a warrant if the truthful statements establish probable cause." *United States v. Ferra*, 948 F.2d 352, 353 (7th Cir. 1991); *see also United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003) ("If the material that is allegedly false is set aside, and 'there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'") (quoting *Franks*, 438 U.S. at 171-72); *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001).

In the affidavit submitted in support of the search warrant DeWitt averred, in relevant part, "This area of the parking lot is a known location utilized by mobile drug dealers to meet drug users and conduct narcotics transactions." (Ex. 4, ¶ 6.) Later he stated, "Both Johnson and Bilda had different accounts to why they were at the locations …." (Ex. 4, ¶ 8.)

Johnson doubts whether mobile drug dealers really frequent the Wendy's parking lot. He provides the affidavit of an investigator who stated he requested from the Milwaukee Police Department any police record related to complaints of drug dealing connected with two addresses associated with the parking lot for the fifteen months preceding Johnson's arrest. (Ex. 5, ¶¶ 2-3.) The Milwaukee Police Department provided records of two such incidents. (Ex. 5.)

Johnson also notes that the parking lot is just down the street from a police station. He argues, "It defies common sense that drug dealers, who DeWitt acknowledges seek to conceal themselves, would choose that location for drug deals." (ECF No. 13 at 25.)

Johnson also disputes the affiant's statement that Bilda and Johnson gave different accounts of why they were at the parking lot. (ECF No. 13 at 25.) He contends that their statements were consistent. Moreover, he argues that their explanations for their meeting should have been included in the affidavit because they tended to negate the inference they were meeting for a drug transaction.

The government responds with affidavits of officers corroborating that the Wendy's parking lot is used for drug transactions and explanations for why those incidents might not be reflected in a police record connected to the Wendy's address. (ECF Nos. 18-6; 18-7; 18-8; 18-9; 18-10.) And the government contends that Bilda's and Johnson's statements as to why they were there were inconsistent in that Johnson said they "had a union meeting," and Bilda said they were "going to go to the union meeting." (ECF No. 18 at 4-5.)

The court need not delve into the veracity of the affiant's statements because they were inconsequential to probable cause. The facts material to establishing probable cause to search the residence were that officers had just found controlled substances in a vehicle Johnson was operating (Ex. 4, ¶ 11); those controlled substances were packaged

14

consistent with distribution (Ex. 4, ¶ 16); the target residence was Johnson's residence (Ex. 4, ¶¶ 10, 17); and Jenkins admitted that there was marijuana in the residence (Ex. 4, ¶ 17).

Neither correction of the alleged misrepresentations nor inclusion of the alleged omissions would alter these facts. These facts were sufficient to establish probable cause to search the residence. Therefore, the court finds no basis for a *Franks* hearing.

### 3. Additional Motion

On March 19, 2021, Johnson filed a motion for leave to file a second motion to suppress. (ECF No. 22.) In it he states, "The defense has received additional materials that weren't provided in discovery." (ECF No. 22, ¶ 3.) Johnson has not provided the court with any information as to when he obtained the additional materials, much less that he could not have obtained them in time to file the proposed motion by the deadline. In short, Johnson has failed to demonstrate excusable neglect, *see* Fed. R. Crim. P. 45(b)(1)(B), for his failure to file this motion by the February 22, 2021 deadline for filing pretrial motions (ECF No. 12), a deadline that was extended twice at Johnson's request (ECF No. 9, 11).

Accordingly, Johnson's motion for leave to file an additional pretrial motion (ECF No. 22) is denied, and the document filed as ECF No. 23 is stricken.

**IT IS THEREFORE RECOMMENDED** that Johnson's motion to suppress (ECF No. 13) be **denied**.

**IT IS FURTHER ORDERED** that Johnson's motion for a *Franks* hearing is **denied**.

**IT IS FURTHER ORDERED** that Johnson's motion to file a second motion to suppress (ECF No. 22) is **denied,** and the document filed as ECF No. 23 is stricken as untimely.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 25th day of March, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge

16

Case 2:20-cr-00214-JPS   Filed 03/25/21   Page 16 of 16   Document 26